FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2006 JAN 10  PM 4: 46

LORETTA G. WHYTE
CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| JESSE L. MORMAN | CIVIL ACTION |
| VERSUS | NO: 04-587-SS |
| DR. JAMES S. LEFTWICH, et al | |

### ORDER AND REASON

Before the undersigned are cross-motions for summary judgment of the plaintiff, Jesse L. Morman ("Morman"), and the defendant, Dr. James S. Leftwich ("Dr. Leftwich"). For the reasons discussed below, Dr. Leftwich's motion is granted and Morman's motion is denied.

### PROCEDURAL BACKGROUND

Morman, a state prisoner at Washington Correctional Institute ("WCI"), filed a complaint on March 5, 2005 in proper person and <u>pro se</u> pursuant to 42 U.S.C. § 1983 naming as defendants Dr. Leftwich and Assistant Warden Kathy McGinnis ("Warden McGinnis"). Rec. doc. 1. He alleged that he "made a sick call" requesting to see the prison dentist, Dr. Leftwich, regarding a toothache and broken partial plate needing repair. He alleged that Dr. Leftwich blamed the dental problems on bad hygiene and the broken partial plate had never been repaired or replaced despite

the passage of an inordinate amount of time. He alleged that Warden McGinnis failed to adequately address his administrative complaint. Rec. doc. 1. The defendants filed a motion to dismiss. The undersigned issued a report and recommendation which was approved and adopted by the District Court. The individual capacity claim against Warden McGinnis was dismissed with prejudice as frivolous pursuant to 28. U.S.C. § 1915(e). The official capacity claims for monetary damages asserted against both defendants were dismissed without prejudice and the motion was denied as to the individual capacity claims against Dr. Leftwich. The District Court found that Morman asserted a cognizable claim that Dr. Leftwich acted with deliberate indifference to Morman's serious medical needs in violation of the Eighth Amendment. Rec. doc. 15. Thereafter the parties consented to trial before a magistrate judge. Rec. doc. 21. A week before Hurricane Katrina, Dr. Leftwich was granted additional time to file a dispositive motion. Rec. doc. 36. He filed his motion for summary judgment on October 13, 2005. Rec. doc. 38. Morman filed a cross-motion for summary judgment on November 7, 2005. Rec. doc. 45.

## SUMMARY JUDGMENT STANDARD

Fed. R. Civ. P. 56 provides in pertinent part that summary judgment will be granted when "... the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." See Celotex Corp. v. Catrett, 477 U.S. 317, 106 S.Ct. 2548, 2552 (1986); and Lujan v. National Wildlife Federation, 497 U.S. 871, 110 S.Ct. 3177, 3189 (1990). To that end, the court must "view the facts and the inferences to be drawn therefrom in the light most favorable to the nonmoving party. Wyatt v. Hunt Plywood, 297 F.3d 405, 409 (5th Cir.

2002). Where the record taken as whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 106 S. Ct. 1348, 1356 (1986); Washington v. Allstate Ins. Co., 901 F.2d 1281 (5th Cir. 1990).

Furthermore, the party moving for summary judgment must "demonstrate the absence of a genuine issue of material fact," but need not negate the elements of the nonmovant's case. Celotex, 106 S.Ct. at 2553; and Lujan, 110 S. Ct. at 3187. If the moving party fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response. If the movant does, however, meet this burden, the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial. Celotex, 106 S.Ct. at 2553-54. A dispute over a material fact is genuine, if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Kee v. City of Rowlett Texas, 247 F.3d 206, 210 (5th Cir. 2001).

This burden is not satisfied with "some metaphysical doubt as to the material facts," Matsushita, 106 S.Ct. at 1356, by "conclusory allegations," Lujan, 110 S. Ct. at 3180, by "unsubstantiated assertions," Hopper v. Frank, 16 F.3d 92 (5th Cir.1994), or by only a "scintilla" of evidence, Davis v. Chevron U.S.A., Inc., 14 F.3d 1082 (5th Cir.1994). The court resolves factual controversies in favor of the nonmoving party, but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts. The court does not, however, in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts. See Lujan, 110 S. Ct. at 3188. Summary judgment is appropriate in any case "where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of

the nonmovant." Armstrong v. City of Dallas, 997 F.2d 62 (5th Cir.1993). If the nonmoving party fails to meet this burden, the motion for summary judgment must be granted. See Evans v. City of Bishop, 238 F.3d 586, 588-89 (5th Cir. 2000).

## UNDISPUTED FACTS

Dr. Leftwich's motion for summary judgment is supported with the following: (1) Morman's WCI medical and dental records; (2) a WCI directive regarding dental care; (3) records on three of Morman's requests for administrative remedies; and (4) affidavits of Dr. Leftwich; Robert Starnes, DDS; Ronald Bell, DDS; and Bessie Carter, RN. Dr. Leftwich was the dental services coordinator at WCI for twenty years and treated Morman from March 27, 2001 through December 2, 2002 and again from July 14, 2003 through August 22, 2004. Exhibit F to Rec. doc. 38 and Rec. doc. 41. Dr. Leftwich was in Kuwait in April and May, 2003 when Morman was treated by Dr. Bell. Exhibits F and H to Rec. doc. 38. Dr. Starnes began seeing Morman at WCI on December 20, 2004. Morman's last reported examination by Dr. Starnes was on July 18, 2005. Exhibit G to Rec. doc. 38 and Rec. doc. 44. Drs. Leftwich, Starnes and Bell all state that they reviewed Morman's WCI dental records and found that, in their professional medical opinions, Morman received proper and adequate dental treatment since his WCI incarceration. Morman submitted his own statement. Attachment to Rec. doc. 45.

WCI issued a directive, dated July 2, 2004, regarding dental care. It provided in part that dental care and treatment would be addressed in the following order:

1. Treatment and control of acute oral infections, pain, and other serious pathology;
2. Control of periodontal disease;

4

    3.      Treatment of chronic dental pathology; and

    4.      Prosthodontic treatment.

The directive stated that, "[c]ompletion of each stage of care is necessary before successive ones can be initiated." Exhibit B to Rec. doc. 38. The directive stressed that good periodontal health was a prerequisite for routine dental care. Dr. Leftwich explained that removable partial dentures are considered prosthodontic treatment. He stated that Morman was treated for his periodontal disease as required by the policy before he received prosthodontic treatment. Exhibit F at pp. 2-3 to Rec. doc. 28.

The medical records indicate that Morman was born on August 8, 1940. Exhibit J to Rec. doc. 28 (Laboratory record for March 19, 2003). Dental records from Wackenhut Corporation, dated December 31, 1996, reported that Morman suffered from periodontal disease in stage II and his oral hygiene was in poor condition. On March 27, 2001, Morman (59 years old) sought treatment from Dr. Leftwich for a tooth fracture. An x-ray revealed that tooth #3 had serious cavities. The root on tooth #12 also had cavities. At Morman's request, tooth #3 was extracted. Dr. Leftwich conducted a periodontal examination on April 4, 2001 that revealed bleeding on probing. Thereafter Morman was seen by Dr. Leftwich approximately once a month through the end of 2001. Although Morman was given oral hygiene instructions, it remained poor. His plaque index ranged from 40% to 90%. A further periodontal examination was conducted on September 27, 2001, which revealed moderate localized pockets and gingival rescission. During this time cavities were filled.

After visits in January and March, 2002, Morman was seen by Dr. Leftwich on May 1, 2002 for evaluation for partial dentures. There were cavities in two teeth, one of which was deep. The

plaque index was greater than 90%. Dr. Leftwich reported that Morman insisted on getting his partial dentures despite his active gum disease. Dr. Leftwich stated that Morman was not eligible for the dentures at that time because he had active periodontal disease, poor oral hygiene and there were cavities that required treatment.[1] At that time Morman refused to have an infected upper wisdom tooth removed. After further cavities were filled in August, Morman reported on September 4, 2002 that he had a broken clasp on an upper removable partial denture. He was placed on the denture waiting list. For the same reasons as described by Dr. Leftwich following the May 1, 2002 visit, Morman remained ineligible for removable dentures. Morman returned on September 24 and December 2, 2002. His plaque index on both visits was 100%. At the December visit he remained on the denture waiting list. Dr. Leftwich was in Kuwait in the spring of 2003. Exhibit F to Rec. doc. 38.

Dr. Bell saw Morman on April 24 and May 17, 2003. A tooth was removed on the second visit. An impression was made to repair the upper partial denture. Exhibit H to Rec. doc. 38.

On July 14, 2003, Morman was seen by Dr. Leftwich who reported that the lab was not able to repair the denture. The plaque index was 100% and his oral hygiene was poor. Dr. Leftwich described Morman as argumentative, confrontational and uncooperative. Morman did not return to Dr. Leftwich for more than six months. From February 2, 2004 through August 22, 2004, Morman was seen at least once a month. His oral hygiene remained poor. The plaque index ranged from 60% to 100%. He was given instructions on cleaning his teeth. In July he refused to have two teeth

---

[1] He added that Morman would not have been eligible for dentures under the July 2, 2004 directive and accepted guidelines for dental care.

extracted. Exhibit F to Rec. doc. 38.

Morman was first seen by Dr. Starnes on December 20, 2004. X-rays revealed moderate bone loss. After several visits, impressions were made in April 2005 and a partial denture was delivered on July 14, 2005. During this time several cavities were filled. Morman was nearly sixty-five years at the time. Dr. Starnes stated:

> It is important that proper hygiene be practiced and gum disease be controlled to receive maximum benefit from partial plates. Although it is not impossible to fit partial plates on an individual with gum disease and improper hygiene, proper oral hygiene and control of gum disease allows the partial plates to last longer and work more effectively.

Rec. doc. 44 at. p. 44.

Nurse Carter reviewed Morman's medical record which indicated there was only one entry from sick call where he requested to see the dentist to repair his upper partial denture. This occurred on September 1, 2002. He was seen in the dental clinic two days later. There were no sick calls for malnourishment, dehydration or weight loss. He complained on January 13, 2002 and May 13, 2004 about an inability to chew his food properly. Exhibit I to Rec. doc. 38.

Morman's statement begins with September 2002. He states that over the next sixteen months, he went back and forth with Dr. Leftwich. Morman states that: (1) Dr. Leftwich told him he was not cleaning his teeth; (2) Dr. Leftwich exaggerated the reports of poor oral hygiene; and (3) his gums would not have bled if Dr. Leftwich "wasn't snatching them with a probing hook." Rec. doc. 45 at p. 5. On July 14, 2005, Morman received upper and lower partial dentures from Dr. Starnes. Id.

The reports of poor oral hygiene were not exaggerated by Dr. Leftwich. The affidavits from

the three dentists reveal that from March 27, 2001 through July 18, 2005, two teeth were extracted and there were at least seven fillings for cavities in the teeth. Exhibits F, G and H to Rec. doc. 38.

## DELIBERATE INDIFFERENCE

To succeed on a claim for damages under 42 U.S.C. § 1983 for inadequate medical care, a convicted prisoner must demonstrate that there has been "deliberate indifference to serious medical needs" by prison officials or other state actors. Estelle v. Gamble, 429 U.S. 97, 104, 97 S.Ct. 285 (1976); Hare v. City of Corinth, 74 F.3d 633, 650 (5th Cir. 1996). Only deliberate indifference, "an unnecessary and wanton infliction of pain . . . or acts repugnant to the conscience of mankind," constitutes conduct proscribed by the Eighth Amendment. Estelle, 429 U.S. at 105-06; accord Gregg v. Georgia, 428 U.S. 153, 182-83, 96 S.Ct. 2909 (1976). "Deliberate indifference" means that a prison official is liable "only if he knows that the inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." Farmer v. Brennan, 511 U.S. 825, 847, 114 S.Ct. 1970 (1994). The Farmer definition applies to Eighth Amendment medical claims. Harris v. Hegmann, 198 F.3d 153, 159 (5th Cir. 1999).

Further, the plaintiff must establish that the defendant possessed a culpable state of mind. Farmer, 511 U.S. at 838 (citing Wilson v. Seiter, 501 U.S. 294, 298, 111 S.Ct. 2321 (1991)). A prison official cannot be held liable "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837. If the court finds that one of the components of the test is not met, it need not address the other component. Davis v. Scott, 157 F.3d 1003, 1006 (5th Cir. 1998).

> The Supreme Court has recently reaffirmed that "deliberate indifference" is a <u>stringent</u> standard of fault, requiring proof that a [state or] municipal actor disregarded a known or obvious consequence of his action. <u>Board of the County Commissioners of Bryan County, Oklahoma v. Brown</u>, 520 U.S. 397, 117 S.Ct. 1382, 1391 (1997). . . . The "deliberate indifference" standard permits courts to separate omissions that "amount to an intentional choice" from those that are merely "unintentionally negligent oversight[s]."

<u>Southard v. Texas Bd. of Crim. Justice</u>, 114 F.3d 539, 551 (5th Cir. 1997) (citations omitted) (emphasis added). "'Subjective recklessness,'" as used in the criminal law, is the appropriate test for deliberate indifference." <u>Norton v. Dimazana</u>, 122 F.3d 286, 291 (5th Cir. 1997) (citing <u>Farmer</u>, 511 U.S. at 838-40).

The undisputed facts do not demonstrate that Dr. Leftwich's treatment of Morman's dental condition resulted in the unnecessary and wanton infliction of pain. There is nothing in the record of dental treatment that is repugnant to the conscience. The undisputed facts do not permit the inference that there was a substantial risk of harm to Morman if he did not receive the partial dentures. Morman's medical records do not demonstrate any evidence of malnourishment or weight loss. At the most there is some disagreement over the dental treatment and whether Morman should have received the dentures at a time when his oral hygiene was poor and he suffered from periodontal disease. While it is clear from Morman's allegations and statement that he is not satisfied with the dental care he received, it is equally clear that the dental care provided was reasonable. Certainly, no finding of deliberate indifference to his dental needs can be made based on this record. Moreover, contentions that amount to a mere disagreement with medical treatment or even negligence do not give rise to a Section 1983 claim. <u>Varnado v. Lynaugh</u>, 920 F.2d 320, 321 (5th Cir. 1991); see <u>Norton v. Dimazana</u>, 122 F.3d 286, 291-92 (5th Cir. 1997) (prisoner's

disagreement with the type or timing of medical services provided cannot support a Section 1983 claim); Mendoza v. Lynaugh, 989 F.2d 191, 193 (5th Cir. 1993) (same); Wesson v. Oglesby, 910 F.2d 278, 284 (5th Cir. 1990) (allegations establishing provision of medical treatment found inconsistent with inference of deliberate indifference). For this reason, Morman's claims must be dismissed.

## QUALIFIED IMMUNITY

Dr. Leftwich contends he is entitled to qualified immunity. Once a plaintiff has alleged a violation of a clearly established constitutional right (See Siegert v. Gilley, 500 U.S. 226, 231, 111 S.Ct. 1789 (1991); Hare v. City of Corinth, 135 F.3d 320, 325 (5th Cir.1998)), the court must consider whether the "conduct was objectively reasonable in light of clearly established law at the time that the challenged conduct occurred." Glenn v. City of Tyler, 242 F.3d 307, 312 (5th Cir. 2001). The defendant's acts are held to be objectively reasonable unless all reasonable officials in the defendant's circumstances would have then known that the defendant's conduct violated the plaintiff's asserted constitutional or federal statutory right. Thus, an individual defendant's subjective state of mind is irrelevant to the qualified immunity inquiry. Cozzo v. Tangipahoa Parish Council-President Government, 262 F.3d 501, 511 (5th Cir. 2001).

Dr. Leftwich contends his conduct was objectively reasonable in light of the clearly established law at the time of Morman's complaints. The undisputed facts of Dr. Leftwich's treatment demonstrate that Morman obtained regular treatment for his dental conditions. Dr. Leftwich filled numerous cavities, extracted a tooth, recommended that other teeth be extracted, but Morman refused the treatment. Morman's teeth were cleaned and he was repeatedly instructed on the requirements of good oral hygiene. Dr. Leftwich's treatment was in accord with WCI's directive

on dental care. At most there was a disagreement over the efficacy of partial dentures given Morman's poor oral hygiene and periodontal disease. The undisputed facts demonstrate that Dr. Leftwich's dental treatment was objectively reasonable. Dr. Leftwich is entitled to qualified immunity.

IT IS ORDERED that the motion of Dr. James Leftwich for summary judgment (Rec. doc. 38) is GRANTED and the cross-motion of Jesse Morman for summary judgment (Rec. doc. 45) is DENIED.

New Orleans, Louisiana, this 6th day of January, 2006.

SALLY SHUSHAN
United States Magistrate Judge